THOMAS, Judge.
C.T. (“the father”) and L.T. (“the mother”) were divorced in September 2013 by a judgment of the Montgomery Circuit Court. That judgment awarded the parties joint legal custody of their child, awarded the mother sole physical custody, and awarded the father liberal visitation rights. On February 4, 2014, the mother filed a petition for modification and a verified emergency ex parte petition to suspend the father’s visitation, in which she averred that the father had perpetrated physical and sexual abuse on the child. The trial court entered an ex parte order suspending the father’s visitation that same day, and it also entered an order setting a review hearing on the matter for February 21, 2014. The father filed an answer, a counterclaim seeking to hold the mother in contempt, and a counterclaim seeking a modification of custody on February 6, 2014.
At February 21, 2014, hearing, the judge assigned to this action determined that the child had been interviewed by someone employed by Child Protect, a local organization whose employees perform forensic interviews of children who have allegedly been abused. That judge entered an order recusing himself from further involvement in this action. According to that order, the judge recused himself from the action to avoid the appearance of impropriety based on the fact that his wife is the director of Child Protect and based on the fact that the person who had interviewed the child for Child Protect is a personal friend.
On February 24, 2014, the father filed a motion requesting a “72-hour hearing.” In that motion, the father relied on former Ala.Code 1975, § 12-15-153, which required that, if an emergency protection order is entered without notice, a hearing on the matter must be held within 72 hours after notice is given to the parent.[1] The mother responded to the father’s motion by arguing that the father had not acquiesced to the judge’s suggestion that visitation be supervised by a neutral third party and that, because of his decision not to engage in visitation under that parameter, the father was not entitled to a hear *151 ing. The mother also noted that an investigation concerning the abuse allegations was ongoing.
The action was reassigned to another circuit-court judge, who, on February 24, 2014, denied the father’s motion for a hearing. The trial court then entered an order that same day setting a final hearing in the action for June 30, 2014, and July 1, 2014. The father sought reconsideration of the denial of his motion for a hearing, arguing that this court’s opinion in Ex parte Couey, 110 So.3d 378 (Ala.Civ.App. 2012), required the trial court to hold a hearing within 72 hours after the entry of the ex parte order affecting the custody of the child. The mother opposed the father’s motion requesting the trial court to reconsider its denial of the father’s motion seeking a hearing, arguing, without citation to authority, that “custody and visitation are two (2) separate and distinct issues” and contending, therefore, that the father’s reliance on Ex parte Couey was misplaced. The father then timely filed his petition for the writ of mandamus with this court on February 27, 2014.
“ ‘A writ of mandamus is an extraordinary remedy ... that should be granted only if the trial court clearly abused its discretion by acting in an arbitrary or capricious manner.’ Ex parte Edwards, 727 So.2d 792, 794 (Ala.1998). The petitioner must demonstrate:
“ ‘ “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’
“Ex parte Edwards, 727 So.2d at 794 (quoting Ex parte Adams, 514 So.2d 845, 850 (Ala.1987)).”
Ex parte D.J.B., 859 So.2d 445, 448 (Ala. Civ.App.2003).
In his petition, the father seeks an order compelling the Montgomery Circuit Court to hold a hearing on the mother’s motion to suspend his visitation. He argues that the ex parte order, although appropriately entered, cannot be maintained indefinitely without providing the father notice, a hearing, and an opportunity to be heard on the matter. He further argues that, under recent precedent established by this court, a hearing should be held within 72 hours after a parent receives notice of an ex parte order affecting his or her rights to the custody of his or her child. As noted earlier, the father relies on this court’s recent pronouncement in Ex parte Couey, 110 So.3d at 381, that,
“[although [Ala.Code 1975,] § 12-15-308(a)[,] applies only in dependency actions,- we believe it to be instructive in nonjuvenile custody cases as well because the serious nature of removing a child from the custody of a parent without giving that parent notice and an opportunity to be heard is the same whether in the context of a juvenile proceeding or a nonjuvenile proceeding. The requirement in dependency cases that a hearing be conducted within 72 hours of a child’s removal from the custody of his or her parent supports a conclusion that, even when it is necessary to remove a child from his or her parent’s custody without first giving the parent notice or an opportunity to be heard, that parent should be given notice and an opportunity to be heard as expeditiously as possible — certainly sooner than 10 weeks after a child has been removed from the parent’s custody.[2]
*152 The mother and the trial court answered the father’s petition. Both assert that Ex parte Coney is inapposite. The mother argues that the father is not entitled to the due-process protections recognized in Ex parte Coney because he was not a custodial parent and has only visitation rights and not custody rights. The trial court first states in its response that this case is a domestic-relations action, presumably to point out to this court that the 72-hour-hearing requirement set out in the Alabama Juvenile Justice Act is not applicable to this action. The trial court further explains that, based on Rule 65(b), Ala. R. Civ. P., which provides that a temporary restraining order in a domestic-relations case does not expire automatically within 10 days, it was permitted to set the hearing on the father’s motion at a later date. Based on this conclusion and the fact that the investigation of the abuse allegations is ongoing, the trial court asserts that its decision to set the hearing on the father’s motion 18 weeks after he first requested a hearing and nearly 21 weeks after his right to visit with the child, was suspended in an ex parte order entered without notice to the father “are not contrary to the findings in Ex parte Coney.” We cannot agree with the mother or the trial court.
We have stated before that
“[o]rdinarily a parent’s right to custody (or visitation) of his minor child cannot be cut off except after due notice to the parent and an opportunity to be heard. To allow such would be to deprive the parent of his legal rights without due process of law. Ex parte White, 245 Ala. [212,] 215, 16 So.2d [500,] 503 [ (1944) ]. However, due process does not require that in every case the determination of the parent’s rights must precede any interference therein. Ex parte White, 245 Ala. 212, 16 So.2d 500. In situations where it appears that the actual health and physical well being of the child are in danger, the court has authority to make a temporary ruling concerning custody (or visitation) until a final determination can be made. Ex parte White, 245 Ala. 212, 16 So.2d 500; Thorne v. Thorne, 344 So.2d 165 (Ala. Civ.App.1977).”
Ex parte Harris, 506 So.2d 1003, 1005 (Ala.Civ.App.1987) (first and third emphasis added). The public policy of this state is to “encourag[e] interaction between noncustodial parents and their children.” Pratt v. Pratt, 56 So.3d 638, 641 (Ala.Civ. App.2010); see also Ala.Code 1975, § 30-3-150 (stating in the article of the Code governing joint custody that “[i]t is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage”). Although an award of sole custody to one parent favors that parent, we cannot agree that the noncustodial parent’s right to visitation is somehow less deserving of due-process protections because it is not labeled “custody.” Thus, we cannot agree with the mother that the fact that the father has lost only visitation rights somehow prevents the father from being entitled to due-process protections or makes the precedents applying those due-process *153 protections to prevent the abuse of ex parte custody orders inapplicable.
Similarly, we reject the trial court’s determination that Rule 65(b) provides a basis for not holding a timely hearing to afford the father the due-process rights to which he is entitled. Although we agree that Rule 65(b) plainly states that the 10-day limitation on temporary restraining orders in Rule 65(b) does not apply in domestic-relations cases, see also Falk v. Falk, 355 So.2d 722, 725 (Ala.Civ.App. 1978), it does not follow that a trial court may ignore the due-process rights of a parent and decline to set a hearing on a matter involving child custody or visitation earlier than four months after the parent requested a hearing. Indeed, a trial court entertaining a petition seeking ex parte custody may act on that petition despite a lack of notice if the allegations contained in that petition demonstrate a likelihood that the health and welfare of the child is in danger. See Thorne v. Thorne, 344 So.2d 165, 170-71 (Ala.Civ.App.1977) (“In the few situations where it appears the actual health and physical well-being of the child are in danger, the court has authority under Ex parte White, [245 Ala. 212, 16 So.2d 500 (1944) ], to make a temporary grant of custody until a final determination can be made.”). However, the right to transfer custody in a “summary proceeding” is limited by the requirement that “ ‘an adequate remedy [be] available by which the parent may afterward have his [or her] rights presented to a proper tribunal.’ ” Ex parte White, 245 Ala. 212, 215, 16 So.2d 500, 503 (1944) (quoting 39 Am.Jur. 604, § 17); see also Ex parte Russell, 911 So.2d 719, 725 (Ala.Civ.App.2005) (Pittman, J., concurring in part and dissenting in part as to the rationale and concurring in the judgment).
One hallmark of an adequate remedy is its timely availability. See Barry v. Bar-chi, 443 U.S. 55, 66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (holding, in the administrative context, that a postdeprivation hearing must be “prompt” and should be “concluded without appreciable delay”); see also Burton v. Alabama Dep’t of Agric. & Indus., 587 F.Supp.2d 1220 (M.D.Ala. 2008) (applying Barry in discussing whether a suspended state employee received an adequate postsuspension remedy). This court has recently held that a parent must “be given notice and an opportunity to be heard as expeditiously as possible ” after the entry of an ex parte custody order, even as soon as 72 hours after notice is given, when practicable. Ex parte Couey, 110 So.3d at 381 and n. 2. This requirement applies even in a domestic-relations action, we explained, “because the serious nature of removing a child from the custody of a parent without giving that parent notice and an opportunity to be heard is the same whether in the context of a juvenile proceeding or a nonjuvenile proceeding.” Id.
We expressly extend the due-process protections afforded a parent whose custodial rights are impacted by an ex parte order to parents whose visitation rights are impacted by such orders. Accordingly, because the father has demonstrated a clear, legal right to the relief he seeks, we grant his petition for the writ of mandamus and order the trial court to immediately set a hearing regarding the suspension of the father’s visitation rights.
PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., concurs.
DONALDSON, J., concurs specially.
PITTMAN and MOORE, JJ., concur in the result, without writings.

. By Act No. 2008-277, Ala. Acts 2008, the . provisions of the former Alabama Juvenile Justice Act, Ala.Code 1975, § 12-15-1 et seq., were either repealed or amended, renumber- - ed, and incorporated into the current Alabama Juvenile Justice Act, Ala.Code 1975, § 12-15-101 et seq. Former § 12-15-153 has been renumbered as Ala.Code 1975, § 12-15-141. The 72-hour requirement has been retained in § 12-15-141.

“ 2We acknowledge that there may be circumstances in which it would be im *152 possible for a circuit court to schedule a hearing within 72 hours of entering an ex parte custody order, although mere difficulty in scheduling such a hearing would not excuse a delay. We cannot overemphasize that a hearing should be conducted as close to within 72 hours as possible after an ex parte custody order has been entered.”