THOMAS, Judge.
B.J.C., the mother, and E.T.A., the father, once lived in Alabama, where they claim to have entered into a common-law marriage relationship.[1] They are the parents of A.S.A-C. ("the child"), who was born in Tennessee on June 27, 2015. The child first lived with the parents in Tennessee, in a residence provided by D.C. and B.C., the child's maternal grandparents (D.C. and B.C. are referred to collectively as "the maternal grandparents"), who reside in Tennessee. From January 25, 2016, through March 23, 2016, the family lived in Alabama in a residence provided in by A.A., the child's paternal grandmother ("the paternal grandmother"), who resides in Alabama. On March 23, 2016, the family returned to Tennessee after a Blount County Department of Human Resources ("DHR") employee contacted the parents regarding a report that DHR had received alleging that the parents were selling marijuana in Alabama. Thus, the child had lived in Tennessee for seven months following his birth and had lived in Alabama for two months before returning to Tennessee.
Although the child had returned to Tennessee, DHR filed a dependency petition in the Blount Juvenile Court on March 31, 2016, and, that same day, the juvenile court entered an order awarding DHR temporary custody of the child based on allegations of "immediate or threatened danger of physical and/or emotional harm."[2] DHR transported the child to Alabama. The child is currently being cared for in Alabama by J.J., the child's paternal grandfather, and his wife, K.J. (J.J. and K.J. are referred to collectively as "the paternal grandparents").
The maternal grandparents, the paternal grandparents, and the paternal grandmother each filed motions to intervene in the dependency action. The materials submitted for our review demonstrate that the juvenile court held what it referred to as a *990 permanency hearing on April 25, 2017 ("the April 25, 2017, hearing"), at which it received ore tenus testimony;[3] however, it heard no testimony regarding the parents' sexual-abuse allegations against the paternal grandmother.
Approximately one month later, on May 31, 2017, the paternal grandmother, who was then exercising supervised visitation with the child, filed a motion in the juvenile court seeking an award of unsupervised visitation.[4] According to her motion, in September 2016 she had been awarded unsupervised visitation; however, the award had been modified to an award of supervised visitation based upon the parents' allegations, among others, that the paternal grandmother had molested the father when he was a child and had spoken inappropriately about the child. The parents filed an objection to the paternal grandmother's May 31, 2017, motion.
Without conducting a hearing, the juvenile court entered an order on June 28, 2017 ("the June 28, 2017, order"), modifying the paternal grandmother's visitation award from supervised visitation for 1 hour per week to unsupervised visitation for a 24-hour period once per week. The June 28, 2017, order reads, in pertinent part: "At the ... April 25, 2017[, hearing], [DHR] confirmed that after investigation, the sexual abuse allegations against the paternal grandmother were not a concern."
The parents filed a motion and an amended motion, and DHR filed a motion, each requesting that the juvenile court set aside the June 28, 2017, order. DHR correctly pointed out that "[t]here was no specific statement by [DHR's witness] that the sexual abuse allegations made by the parents were not a concern" and that, therefore, the juvenile court had misremembered testimony from the April 25, 2017, hearing upon which it expressly relied. DHR's assertion is fully supported by the transcript of the April 25, 2017, hearing. The juvenile court set a hearing for September 27, 2017. The parents filed in this court a petition for the writ of mandamus and a motion seeking a stay of the September 27, 2017, hearing.
The Temporal Requirements of Rule 21(a)(3), Ala. R. App. P.
A generous reading of the parents' request warrants consideration of the merits, notwithstanding the parents' noncompliance with the temporal requirements of Rule 21(a)(3). The child's guardian ad litem filed a motion requesting that we dismiss the parents' petition, in which he correctly asserted that the parents had filed their mandamus petition in this court 29 days after the entry of the June 28, 2017, order and that they had not submitted a statement of good cause for this court's consideration of their mandamus petition, notwithstanding its having been filed after the expiration of the presumptively reasonable time. See Rule 21(a)(3).
However, in Ex parte M.F.B., 228 So.3d 460, 461 (Ala. Civ. App. 2017), we explained:
"The mother filed in each case a 'motion to set aside' the October 21 orders, asserting, among other things, that the juvenile court's orders had been entered in violation of her due-process rights to notice and a hearing. The juvenile court did not act on the two 'motion[s] to set aside,' and the mother filed her mandamus *991 petition in this court on November 23, 2016, 33 days after the entry of the juvenile-court orders she challenges.
" 'Rule 21(a)(3), Ala. R. App. P., provides that a petition for an extraordinary writ directed to an appellate court, such as this court, "shall be filed within a reasonable time" and that the presumptively reasonable time for filing a petition seeking review of a trial court's order "shall be the same as the time for taking an appeal." In juvenile actions, an appeal must be taken within 14 days of the entry of the judgment or order appealed from. Rule 4(a)(1)(E), Ala. R. App. P.; Rule 28(C), Ala. R. Juv. P. [A party's] motion to set aside the juvenile court's order does not affect the timeliness analysis because, "unlike a postjudgment motion following a final judgment, a motion to reconsider an interlocutory order does not toll the presumptively reasonable time period that a party has to petition an appellate court for a writ of mandamus." Ex parte Onyx Waste Servs. of Florida, 979 So.2d 833, 834 (Ala. Civ. App. 2007) (citing Ex parte Troutman Sanders, LLP, 866 So.2d 547, 549-50 (Ala. 2003) ).'
" Ex parte C.J.A., 12 So.3d 1214, 1215-16 (Ala. Civ. App. 2009). In this case, the mother has not submitted a statement of good cause for this court's consideration of her mandamus petition, notwithstanding its having been filed after the expiration of the presumptively reasonable time. See Rule 21(a)(3), Ala. R. App. P.
"That said, however, this court has interpreted a recent decision, Ex parte K.R., 210 So.3d 1106 (Ala. 2016), in which our supreme court addressed on mandamus review the merits of a challenge to the lawfulness of a particular probate-court judge's temporary appointment by a clerk of that court, as having held that 'in situations in which a petition for the writ of mandamus challenges the subject-matter jurisdiction of the court in which the challenged interlocutory order was rendered, the petition need not timely invoke the jurisdiction of the appellate court.' Ex parte J.B., 223 So.3d 251, 254 (Ala. Civ. App. 2016). Application of Ex parte J.B. to the circumstances of this case, in which the mother's contentions regarding lack of notice and a hearing in connection with a court's ex parte limitation of her visitation rights implicate due-process guarantees, see Ex parte C.T., 154 So.3d 149, 152-53 (Ala. Civ. App. 2014), and do in fact go to the power of the juvenile court to enter the October 21, 2016, orders, warrants consideration of the merits, notwithstanding the mother's noncompliance with Rule 21(a)(3), Ala. R. App. P. See M.G.D. v. L.B., 164 So.3d 606, 608, 611-12 (Ala. Civ. App. 2014) (holding void, as violative of procedural due-process principles, juvenile court's order restricting removal of minor children from Alabama without permission because order was issued without notice and opportunity to be heard)."
(Footnote omitted.) Therefore, like we did in Ex parte M.F.B., we deny the motion to dismiss filed by the child's guardian ad litem based upon our conclusion that the parents' request went to the power of the juvenile court to enter the June 28, 2017, order. Similar to the child's guardian ad litem, the paternal grandmother filed a motion to dismiss "and for immediate stay" in this court. For the foregoing reasons, we also deny the paternal grandmother's motion.
The Merits
"The standard we apply when reviewing a petition for the writ of mandamus is well settled.
*992 " ' " '[M]andamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Horton, 711 So.2d 979, 983 (Ala. 1998)." ' "
Ex parte Builders & Contractors Ass'n of Mississippi Self-Insurer's Fund, 980 So.2d 1003, 1006 (Ala. Civ. App. 2007) (quoting Ex parte Alloy Wheels Int'l, Ltd., 882 So.2d 819, 821 (Ala. 2003), overruled on other grounds by Ex parte DBI, Inc., 23 So.3d 635, 657 (Ala. 2009) )."
Ex parte Hutson, 201 So.3d 570, 571-72 (Ala. Civ. App. 2016).
In their mandamus petition, the parents contend that the June 28, 2017, order "puts [the child] at severe risk." DHR, the parents' adversary in the dependency action and the only respondent to file an answer to the parents' petition, agrees. The materials presented for our review support the assertion that the juvenile court modified the paternal grandmother's visitation rights without a hearing regarding the parents' sexual-abuse allegations.
"The courts of Alabama have often held:
" 'In dealing with such a delicate and difficult question-the welfare of a minor child-due process of law in legal proceedings should be observed. These settled courses of procedure, as established by our law, include due notice, a hearing or opportunity to be heard before a court of competent jurisdiction. Tillman v. Walters, 214 Ala. 71, 108 So. 62 [1925].'
" Danford v. Dupree, 272 Ala. 517, 132 So.2d 734 (1961). Thorne v. Thorne, 344 So.2d 165 (Ala. Civ. App. 1977). The parental right to due process far outweighs any burden that would be placed on the proceeding to determine that right. Thorne v. Thorne, supra."
Lamoreaux v. Schadt, 442 So.2d 117, 118 (Ala. Civ. App. 1983) ; see also Winford v. Winford, 139 So.3d 179, 183 (Ala. Civ. App. 2013).
Therefore, the parents have demonstrated a clear, legal right to the relief they seek. We grant the petition for the writ of mandamus and order the juvenile court to immediately vacate its June 28, 2017, order and, if necessary, to conduct further proceedings consistent with this opinion.
PETITION GRANTED; WRIT ISSUED.
Thompson, P.J., and Moore, J., concur.
Pittman, J., concurs specially, with writing, which Donaldson, J., joins.
PITTMAN, Judge, concurring specially.
I concur in the main opinion. But see Ex parte M.F.B., 228 So.3d 460, 462 (Ala. Civ. App. 2017) (Pittman, J., concurring specially).
Donaldson, J., concurs.

The facts are gleaned from both the materials provided in the parents' petition for the writ of mandamus and from the record in the parents' appeal in a case involving the same parties and in which we are also issuing an opinion today. See B.J.C. v. Blount Cty. Dep't of Human Res., [Ms. 2160489, Sept. 8, 2017] . (Note from the Reporter of decisions: On November 3, 2017; on application for rehearing, the Alabama Court of Civil Appeals withdrew its September 8, 2017, opinion and substituted another opinion. See --- So. 3d ---- (Ala. Civ. App. 2017).) "It is axiomatic that courts judicially know their own records."Lovejoy v. State, 32 Ala.App. 110, 112, 22 So.2d 532, 533 (1945).

The parties to this petition have not raised any question regarding the jurisdiction of the juvenile court in the underlying action pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act, § 30-3B-101 et seq., Ala. Code 1975; thus, they have presented no materials for our review regarding that issue. We express no opinion on the issue.

The materials provided for our review do not demonstrate when (or whether) the juvenile court adjudicated the child dependent.

Although it is not entirely clear, it appears that, before the April 25, 2017, hearing, the paternal grandmother had made an informal request to DHR that the "restrictions [on the paternal grandmother's visitation] be lifted."